DART v DART

Docket No. 110361. Argued April 7, 1999 (Calendar No. 8). Decided July 20, 1999. Rehearing denied 461 Mich 1205.

Katina E. Dart brought an action for divorce in the Ingham Circuit Court from Robert C. Dart one day after Robert Dart had filed for divorce in England, where they and their children lived at the time. A consent order was subsequently entered in the English court, and thereafter the defendant moved in the Ingham Circuit Court for summary disposition pursuant to MCR 2.116(C)(4) and (6) on the bases of lack of jurisdiction and pendency of a prior proceeding. Following a hearing, the circuit court, William E. Collette, J., determined that jurisdiction was proper in Michigan and assumed jurisdiction over the children and the divorce proceeding. Both suits proceeded. A decree absolute of divorce was entered in the English court, and, after a seven-day trial regarding the parties' assets and the plaintiff's reasonable needs, the court awarded the plaintiff a lump sum of £9 million and certain real and personal property. Defendant was awarded four automobiles and the balance of the marital estate. The English court expressly found that the plaintiff was not entitled to a substantial share of defendant's family wealth, in that it was not a product of the marriage and had not been generated by the efforts of either party. The defendant then moved to stay or dismiss the Ingham Circuit Court proceedings, arguing that the English judgment was entitled to enforcement under the principle of comity and under the Uniform Foreign Money-Judgments Recognition Act, MCL 691.1151 et seq.; MSA 27.955(1) et seq., and that the action was barred by res judicata. The circuit court denied the motion. The Court of Appeals, BANDSTRA, P.J., and GRIFFIN and FITZGERALD, JJ., reversed, concluding that the entire English court judgment should be enforced under the act. 224 Mich App 146 (1997) (Docket No. 193786). The plaintiff appeals.

In an opinion by Justice KELLY, joined by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, and YOUNG, the Supreme Court held:

Principles of comity and res judicata mandate that the English divorce judgment be enforced. The English court decided the property distribution on the merits, and no evidence was presented showing that the plaintiff was denied due process.

1. The Court of Appeals correctly held that comity dictated that the English judgment should be enforced because the plaintiff was accorded due process. Because the English judgment adjudicated the property issue, the plaintiff is barred from relitigating that issue under res judicata. Both parties participated and were represented by counsel in the English court proceedings. The English court's treatment of the defendant's interests in the Dart family trusts and assets as separate property, rather than marital assets, did not violate the plaintiff's right to due process.

2. The plaintiff's assertion that the English court failed to consider marital property is flawed. The English court decided this issue on the merits. Consequently, res judicata bars the plaintiff from relitigating the property distribution issue. The Michigan divorce action involves the same parties with the same assets and the same children as the English action. The fact that it does not address custody or visitation is not fatal to its preclusive effect with respect to property distribution.

Affirmed.

Justice CAVANAGH, joined by Justice BRICKLEY, dissenting, stated that the operation of the English system of marital asset division in cases involving substantial assets reflects considerations very different from those of Michigan, and that such considerations cast a shadow on the decision sufficient to preclude Michigan courts, with their well-established criteria for property distribution in divorce cases, from recognizing a decision that is not only from another land, but truly foreign to the concepts underlying Michigan law.

*Carson, Fischer, P.L.C.* (by *Robert M. Carson* and *Michelle C. Didorosi*), *Butzel, Long, P.C.* (by *Frederick G. Buesser* and *Brett D. Pynnonen*), and *Arthur R. Miller* for the plaintiff-appellant.

*Dickinson, Wright, P.L.L.C.* (by *Hanley M. Gurwin, Robert W. Powell*, and *Amy A. Stawski*), for the defendant-appellee.

KELLY, J. We granted leave to determine whether the parties' English divorce judgment is entitled to full

faith and credit under the principle of comity, and whether res judicata bars the action.[1]

We hold that principles of comity and res judicata mandate that the Darts' foreign divorce judgment be enforced. The English court decided the property distribution issue on the merits, and no evidence was presented showing that plaintiff Katina Dart was denied due process. We affirm the decision of the Court of Appeals.

I. FACTS

Plaintiff and defendant were married in 1980 and were residents of Okemos, Michigan until 1993, when they moved to England. The couple owned a large house in Okemos, situated on thirty-nine acres of land, valued at $1,500,000. The parties had two children. The defendant is the son of the founder of Dart Container Corporation, one of the largest family-controlled businesses in the United States. The defendant's earned income for the years 1992, 1993, and 1994, was $313,009, $563,917, and $281,548, respectively. Between 1990 and 1993, the family's annual expenditures ranged from $300,000 to $600,000. The move to England made possible a September 1993 transfer of several hundred million dollars to the defendant from family trusts.

In 1974, before the marriage, the defendant's father established a trust for the benefit of defendant and

---

[1] We note that the lower courts considered whether the Uniform Foreign-Money Judgments Recognition Act (UFMJRA), MCL 691.1151 *et seq.*; MSA 27.955(1) *et seq.*, applied to the facts of this case. However, even if the UFMJRA did not apply, we can decide this issue under the general principle of comity. See *Bang v Park*, 116 Mich App 34; 321 NW2d 831 (1982). We note, also, that the circuit court's jurisdiction was not raised as an issue in the Court of Appeals.

his brother. For the transfer to occur, defendant had to renounce his United States citizenship and relocate outside the United States. The plaintiff refused to renounce her United States citizenship, and she also refused to renounce the citizenship of the children. She claims that, despite the relocation to London, England, she has always considered herself a resident and domiciliary of Okemos, Michigan.

In 1993, the parties jointly purchased a house near London for £2.75 million, and began renovations that took over a year to complete and cost another £3.5 million. They enrolled the children in the American School of London. Between 1993 and 1995, plaintiff asserts that she and the children made regular trips to Michigan for holidays, medical care, vacations, haircuts and other activities. Also, she maintained her Michigan driver's license and voted regularly in Michigan elections.

In September 1993, defendant received his distribution from the family trust which had a present, net value of £274 million (approximately $500,000,000). In the fall of 1994, plaintiff announced that she wanted a divorce. She revealed that what she had previously described to the defendant as a "one night stand" in 1989 had actually been a regular, adulterous affair with a man in Greece. The plaintiff asserted that she and defendant agreed to postpone the divorce action until she and the children returned to Michigan after the 1994-95 school year.

Despite the putative agreement, defendant filed for divorce in England on February 3, 1995. Plaintiff was served with process at the parties' home the following day. She contacted her American attorneys, and they filed a similar suit on her behalf in Michigan in the Ingham Circuit Court four days later. The parties

remained in England until a consent order was entered in the English court on June 9, 1995, allowing plaintiff to return with the children to Michigan.

On March 21, 1995, in the Ingham Circuit Court, defendant moved for summary disposition pursuant to MCR 2.116(C)(4) and (6) on the bases of lack of jurisdiction and pendency of a prior proceeding. Following a hearing, the circuit court determined that jurisdiction was proper in Michigan and assumed jurisdiction over the children and the divorce proceeding. The court reserved for future decision the issue of jurisdiction over the parties' property.

Plaintiff also brought a jurisdictional challenge. The English court ruled on June 13, 1995, that jurisdiction was proper in England. Defendant then asked the Ingham Circuit Court to defer jurisdiction to the English court on the basis of *forum non conveniens*. After a hearing on August 7, 1995, the circuit court denied the motion and assumed jurisdiction over the parties' property.

Both suits proceeded. On October 27, 1995, a "decree absolute" of divorce was entered in the English court. This was followed by a seven-day trial in March 1996 in which plaintiff filed an answer claiming the "full range of financial ancillary relief available to a wife under the Matrimonial Causes Act [of] 1973."

Both sides presented expert witnesses who testified regarding the parties' assets and plaintiff's reasonable needs. On March 21, 1996, the English court issued a lengthy opinion in which it determined defendant's total net worth to be "about £400 million."

The court ruled that the reasonable needs or requirements of plaintiff, in light of her predivorce lifestyle and habits and the available assets, entitled

her to £300,000 ($450,000) a year for life. However, the court held that, "In seeking to achieve justice [the court is] not limited to the reasonable annual expenditure of the wife . . . or to such other matters . . . described as constituting her 'reasonable requirements.' "

The court awarded the plaintiff a lump sum of £9 million ($13,500,000), the amount it felt necessary to achieve an equitable distribution. The plaintiff was also awarded the house in Okemos, Michigan, and its contents, that the parties agreed were worth approximately $1.5 million. She was awarded four paintings and her jewelry. The court also set child support in the amount of $95,400 a year for both children.

Defendant was awarded four automobiles and the balance of the marital estate. The English court expressly found that plaintiff was not entitled to a substantial share of defendant's family wealth. It was not a product of the marriage and had not been generated by the efforts of either party.

On March 29, 1996, defendant moved to stay or dismiss the Ingham Circuit Court proceedings, arguing that the English judgment was entitled to enforcement under the principle of comity and under the Uniform Foreign Money-Judgments Recognition Act, MCL 691.1151 *et seq.*; MSA 27.955(1) *et seq.* At the hearing on April 8, 1996, he urged, also, that the present action was barred by res judicata.

The circuit court judge denied the motion, finding that the English judgment was not entitled to recognition under the UFMJRA or the principle of comity. He reasoned that the English system of law was repugnant to the public policy of Michigan, and the English decision violated plaintiff's "right to have a fair and equitable distribution of property . . . ."

On appeal, in a per curiam opinion, the Court of Appeals reversed, concluding that the "entire judgment, including the property division as well as the child support and lump-sum awards," should be enforced under the UFMJRA. 224 Mich App 146, 150; 568 NW2d 353 (1997).

With regard to whether the English law was repugnant to our public policy, the Court of Appeals explained:

> [I]t cannot reasonably be argued that plaintiff was denied due process because she was represented by counsel, given an opportunity to be heard, and presented evidence on her own behalf. Although the circuit court opined that the English judge was not impartial, a review of the lengthy opinion of the English judge fails to support a finding of bias. Further, had the issue of fault been raised, it would not have benefited plaintiff, who admitted that her continuing infidelity was the cause of the marital breakdown. Consequently, no evidence that plaintiff was prejudiced by an unfair tribunal or proceeding is present. [224 Mich App 151-152.]

> [T]he factors that judges take into consideration in property division in English divorce cases under § 25 of the Matrimonial Causes Act of 1973 are virtually identical to the factors identified by our Supreme Court in *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992). . . . While the Ingham circuit judge might have awarded plaintiff more of the marital estate than did the English judge, that fact alone does not render the English judgment repugnant to the public policy of the state where the children are adequately provided for and the plaintiff has the means to maintain a lifestyle similar to the one she enjoyed throughout the greater part of the marriage. [*Id.* at 152.]

The Court of Appeals also concluded that comity mandated that the English judgment be respected. Plaintiff had a fair hearing on the merits at which she

was present, represented by counsel, and actively participated. Thus, she was accorded due process.

Finally, the Court of Appeals reasoned that res judicata barred the case from being relitigated because the English court had considered the property, alimony, and child support claims and issued a final order. The English court did not consider child custody or visitation. These issues were within the purview of the Ingham Circuit Court under the Uniform Child Custody Jurisdiction Act, MCL 600.653; MSA 27A.653.

When plaintiff appealed, we granted leave on October 12, 1998. 459 Mich 880.

## II. ANALYSIS

The Court of Appeals correctly held that comity dictated that the judgment should be enforced because the plaintiff was accorded due process. Since the English judgment adjudicated the property issue, the plaintiff is barred from relitigating that issue under res judicata.

> Comity is defined as the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. [*Bang v Park*, 116 Mich App 34, 39; 321 NW2d 831 (1982), citing 16 Am Jur 2d, Conflict of Laws, § 10, pp 27-29 (currently § 15, pp 25-26).]

Comity mandates that this foreign judgment be given force and effect. The seminal United States Supreme Court case of *Hilton v Guyot*,[2] set forth the

---

[2] 159 US 113, 202-203; 16 S Ct 139; 40 L Ed 95 (1895).

factors that the federal courts use in recognizing and giving full effect to the judgment of foreign countries under comity:

> [W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

Michigan courts have used the *Hilton* criteria. In *Growe v Growe*,[3] the appellee began a domestic relations action in Ontario. A judgment for alimony and custody of the parties' minor children was rendered by the Supreme Court of Ontario. Later, the defendant left Canada, obtained a Nevada divorce, and began living in Wayne County, Michigan. The appellee commenced suit in Wayne Circuit Court seeking support arrearages. The trial court dismissed the appellee's action, and the Court of Appeals, in reviewing the appellee's request for relief, noted:

> Faced as we are here with a judgment from a court of competent jurisdiction which lies but the breadth of a river from the instant court, closer, indeed, than most of the remaining 49 States, and a court which draws its concepts of law from the same roots as ours, comity supplies a

---

[3] 2 Mich App 25; 138 NW2d 537 (1965).

rational and well-founded reason for affording relief to this plaintiff. Any appellate court faced with the compelling elements this Court finds before it would be derelict if it did not examine minutely this burgeoning concept of jurisprudence. [2 Mich App 32.]

In upholding the Ontario judgment under the principle of comity, the Court of Appeals held:

A review of the judgment will indicate whether or not the basic rudiments of due process were followed, whether the parties were present in court, whether a hearing on the merits was had. [2 Mich App 33.]

Here, both parties participated and were represented by counsel in the English court proceedings. Plaintiff initially challenged jurisdiction in the English court. She asserted that defendant had not been "habitually" a resident of England for twelve months. Justice Johnson of the Family Division of the High Court of Justice ruled in defendant's favor, concluding that England was his main home and that he intended to stay there.

Plaintiff argues that the English judgment should not be enforced because defendant was not domiciled in England. We find this argument unpersuasive. The present case is distinguishable from the situation presented in *Gray v Gray*, 320 Mich 49, 58; 30 NW2d 426 (1948). In *Gray*, the wife was not personally served with process and the husband lived in Nevada only for the time necessary to obtain a divorce, then returned to Michigan. Under those facts, we determined that he had not acquired a bona fide domicile in Nevada and refused to recognize the divorce. See also *Henry v Henry*, 362 Mich 85, 92-93; 106 NW2d 570 (1960). However, in the present case, the record does not reflect that defendant moved to England for

the purpose of obtaining a divorce. Rather, he moved to England to receive a disbursement from his family's trust.

The English court heard evidence pertaining to the value of the Dart Container Corporation, as well as defendant's salary and other real and personal property. It heard evidence regarding plaintiff's nonmonetary contributions to the marriage as well. It considered the home in Michigan, paintings, jewelry, and cars.

The parties agree that the factors that the English courts examine when dividing property are substantially the same as those used in Michigan. In *Sparks v Sparks, supra,* this Court set forth the appropriate factors to consider in the division of marital property:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Id.* at 159-160.]

Section 25 of the Matrimonial Causes Act[4] requires that an English court consider nearly identical factors in dividing marital property.

Plaintiff argues that English courts apply a different rationale in cases involving large assets. In her brief, she asserts that the English court principally examined her financial needs to determine the appropriate award, not the marital assets.

In *Preston v Preston,*[5] the English court announced a formula to be applied in cases in which the availa-

---

[4] English Matrimonial Causes Act, 1973, § 25.

[5] 1981 2 FLR 331.

ble resources are large. *Preston* established that there is a maximum sum to be awarded. This so-called "*Preston* ceiling" limits the award to an amount that satisfies the court's estimation of a wife's needs for support. Lord Justice Ormrod wrote in *Preston*:

> I think that on the true construction of § 25 there does come a point, in cases where the available resources are very large, . . . when the amount required to fulfill its terms "levels off," and redistribution of capital as such, in some unspecified ratio begins, which is outside the section. [*Id.* at 339.]

Had the English court actually used this formulation to divide the parties' marital assets, we might agree with plaintiff that she was denied due process. However, the English court did not use the *Preston* ceiling. Instead, it determined that the defendant's holdings and trust income were not marital property. Justice Johnson explained:

> [I]f you had a case where the husband and wife together built up a vast property empire, I see no reason why the wife's contribution should not entitle her to 50%. There is said to be a distinction between the wife whose contribution was child care and the wife who actually worked in the business, doing the books or whatever it was. . . . If Mr. and Mrs. Dart had started with nothing and in a back street somewhere in Detroit they had started making plastic objects and over the period of 20 or 30 years they had [ended] up with an empire worth £1,000 million[,] I would see every reason for Mrs. Dart having half of it. Personally, I do not have any difficulty with that. Whether the English law permits it or not is another matter, but that is not this case.

Normally, property received by a married party as an inheritance, but kept separate from marital property, is deemed to be separate property not subject to

distribution. *Lee v Lee*, 191 Mich App 73; 477 NW2d 429 (1991). The trust income from the Dart Container Corporation was never marital property. Although the defendant worked for Dart Container Corporation during the marriage, his compensation was the salary and bonuses that he earned. His cumulative salary and bonuses over the course of the marriage were far less than the $14.5 million property award that plaintiff received.

The Dart fortune and defendant's interest in it exist independently of defendant's workplace activities or the marriage partnership.[6]

Thus, the English court's treatment of defendant's interests in the Dart family trusts and assets as separate property, rather than marital assets, did not violate plaintiff's right to due process.

---

[6] We recognize that, in certain situations, a spouse's separate assets, or the appreciation in their value during the marriage, may be included in the marital estate.

In *Hanaway v Hanaway*, 208 Mich App 278; 527 NW2d 792 (1995), the Court of Appeals held that stock the defendant inherited in a family-owned company could be distributed as part of the property award. The plaintiff's handling of child-rearing and domestic duties had freed the defendant to concentrate on building the company and increasing the value of its stock. Similarly, in *Reeves v Reeves*, 226 Mich App 490; 575 NW2d 1 (1997), the Court of Appeals concluded that the marital estate did include the appreciation in value of the husband's separate assets that he actively managed during the marriage, but not the appreciation of his passive investments.

We agree with the rationales expressed in *Hanaway* and *Reeves*. However, we find the circumstances in those cases distinguishable from the present situation. We recognize the possibility that plaintiff might have shown a nexus between defendant's work at the company and the underlying trust assets. The object would have been to include within the marital estate the appreciation in value of the trust assets. However, we conclude that the possibility of prevailing was remote and, therefore, not a sufficient reason for us to decline to recognize the English judgment. Unlike the husband in *Reeves*, *supra*, defendant did not actively manage the trust in question. It was a legal entity separately created by defendant's father.

Moreover, plaintiff's assertion that the English court failed to consider marital property is flawed. The English judgment awarded her the $1.5 million house in Okemos, some paintings, and a car. It also awarded child support in the amount of more than $90,000 a year. Certainly, the English court could not have divided these marital assets had there been no discovery. We find that the plaintiff was accorded due process in the English proceeding.

Consequently, res judicata bars the plaintiff from relitigating the property distribution issue. The English court decided this issue on the merits. Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. *Eaton Co Bd of Co Rd Comm'rs v Schultz*, 205 Mich App 371, 375; 521 NW2d 847 (1994). A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. *Id.* at 375-376.

Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Gose v Monroe Auto Equipment Co*, 409 Mich 147, 160-163; 294 NW2d 165 (1980); *Sprague v Buhagiar*, 213 Mich App 310, 313; 539 NW2d 587 (1995).

Here, the Michigan divorce action involves the same parties with the same assets and the same children as the English action. We have already determined under our comity analysis that the English judgment is valid. The fact that it does not address custody or visitation is not fatal to its preclusive

effect with respect to property distribution. The Ingham Circuit Court has jurisdiction over the questions of custody and visitation, pursuant to the Uniform Child Custody Jurisdiction Act, *supra*. See *Braden v Braden,* 217 Mich App 331, 338-339; 551 NW2d 467 (1996). Accordingly, res judicata bars relitigation of the present action.

### III. CONCLUSION

We affirm the Court of Appeals decision to give deference to the English divorce judgment under the principle of comity. It was evident from the judgment rendered in England that plaintiff had a fair hearing on the merits, that she was present, represented by counsel, and actively participated. Thus, the present action is barred by res judicata.

WEAVER, C.J., and TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with KELLY, J.

CAVANAGH, J. (*dissenting*). I must part company with the majority on the deference shown to the English court's judgment. While I agree with Justice KELLY that the English court did not apply the *Preston*[1] "ceiling" rule in this case, but rather steered away from such a ruling to find the bulk of defendant's assets to be nonmarital property, I am unpersuaded that such a finding removes the English decision from the looming shadow of *Preston.*

As even the majority tacitly admits, the application of the *Preston* rule in a case such as this (or in any case for that matter) would likely raise serious due process concerns. The mere existence of such a rule,

---

[1] *Preston v Preston,* 1981 2 FLR 331.

and the apparent statutory basis for the rule cited by
Lord Justice Ormrod in adopting it,[2] suggests that, at
least in cases in which substantial assets are involved,
the goals of the English judicial system in marital dis-
solution cases differ substantially from the frame-
work of our state, as reviewed by us in *Sparks*.[3]
Where plaintiff was in the exact position necessary
for her to suffer the ill effects not only of the *Preston*
rule, but also the underlying statutory and judicial
rationales for it, I cannot say, particularly in view of
the asset division undertaken by the English court,
that she escaped unscathed by the effects of the
adverse predispositions demonstrated.

In reaching this conclusion, it is necessary to con-
sider, given the majority's reliance on the determina-
tion of the trust assets as nonmarital in nature, what
sort of effect would have occurred had Justice John-
son of the English court found the entire amount of
disputed property (including the trust assets) to con-
sist of marital assets. While the justice postulated he
personally would not have had difficulty awarding
plaintiff half the assets in such a case, he also noted
that whether that would be permitted under law was
another matter. Indeed, the *Preston* rule would
appear to dictate that, regardless of his decision,
plaintiff, from the beginning of the English case, was
predestined to receive only a fraction of the disputed
assets, regardless of the determinations of the Court
on whatever substantive issues there might have been
(including the marital property issue). It is difficult to
give due process credence to a system in which the
result would remain adverse to the plaintiff whether

---

[2] See *Preston* at 339.

[3] *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992).

or not she prevailed on the point the majority determines the case should be decided upon.

Accordingly, while not, in large part, disputing the authorities cited by the majority as a general matter, I am nonetheless convinced that the operation of the English system of marital asset division in cases involving substantial assets reflects considerations very different from our own, and that such considerations cast a shadow on the decision sufficient to preclude Michigan courts, with our well-established criteria for property distribution in divorce cases, from recognizing a decision that is not only from another land, but truly foreign to the concepts underlying Michigan law. Accordingly, I respectfully dissent from the Court's decision.

BRICKLEY, J., concurred with CAVANAGH, J.