KELLY, J.
(concurring in part and dissenting in part). I agree with the reasoning of the majority in part IV(C) of its opinion as it relates to: (1) the analysis of the record-keeping activity resulting from the interaction of MCL 388.1752 and Executive Order No. 2000-9 and (2) the claims regarding what must be included in school improvement plans under MCL 380.1277.
I further agree with the conclusion of part IV(B) of the majority opinion. The releases signed by the plaintiff *134 school districts not involved in Durant I[1] in 1997 were designed to place those districts in a position similar to that of the Durant I plaintiffs.
However, I cannot agree that the “post-Durant I” activities involving special assistance to students having academic difficulty were solely permissive activities in MCL 380.1282 as amended by 1997 PA 181. I respectfully dissent from the majority’s holding and would remand the case for further factual development of the claim involving those activities.
Moreover, because I cannot agree with much of the majority’s analysis concerning plaintiffs’ remaining claims, I respectfully dissent from the conclusion that those claims were barred by res judicata. I would remand the remainder of plaintiffs’ claims to the Court of Appeals for further substantive review.
I. PLAINTIFFS’ “POST-DURANT I CLAIMS”
INVOLVING SPECIAL ASSISTANCE
The majority has chosen to find all but three of plaintiffs’ claims barred by res judicata. I will discuss the three before proceeding to the remaining claims. As stated above, I agree with the majority’s treatment of the alleged obligations under MCL 388.1752 and EO 2000-9, and those under MCL 380.1277.
However, I cannot join the majority’s decision regarding the activities required by the 1997 changes to MCL 380.1282, 1997 PA 181. The majority maintains that a substantial number of the activities mandated in the amendment are permissive activities, not included as “state requirements” as described in MCL 21.234(5)(h). However, MCL 380.1279, the statute outlining the *135 requirements for state endorsed diplomas mentioned in MCL 380.1282(2), contains language that affects the review of the meeting discussed by the majority concerning MCL 380.1282. Specifically, one of the mandated activities in MCL 380.1279 is the meeting that the majority found to be merely permissive in MCL 380.1282. Ante at 131. See MCL 380.1279(4). When the two statutes are read together, it becomes clear that the allegedly new or increased activities in MCL 380.1282 are mandatory, despite the permissive language in MCL 380.1282.[2]
II. PLAINTIFFS’ REMAINING “PRE-DURANT I” CLAIMS
I next address plaintiffs’ claims that involve activities mandated by statute or otherwise in existence before this Court’s Durant I decision on July 31, 1997. I first question whether res judicata can be properly applicable to these claims under the circumstances. In order to invoke res judicata, a court must find that the parties were in privity. In concluding here that the nonparticipating school districts were in privity, the majority focuses on the nature of the declaratory relief sought in Durant I.[3]
*136 However, I believe that the majority fails to adequately discuss the proper application of res judicata to declaratory judgments. I would find that our judgment in Durant I does not preclude the claims that plaintiffs allegedly “failed” to raise in that case.
I reach this conclusion in part through the language of Durant I itself. The majority there gave a money judgment to plaintiffs. But all justices agreed that relief in future cases should be solely of a declaratory nature. See Durant I, 205-206. In fact, the majority clearly anticipated the continuing need for review and declaratory relief in light of the fact that school mandates and funding are ever changing:
[Const 1963, art 9, § 32] authorizes taxpayers to file suit in the Court of Appeals to enforce the provisions of § 29. As arduous as the proceedings in this case have been, we have succeeded in deciding many points of law that will guide future decisions. Thus, there is every reason to hope that future cases will be much more straightforward. We anticipate that taxpayer cases filed in the Court of Appeals will proceed to rapid decision on the issue whether the state has an obligation under art 9, § 29 to fund an activity or *137 service. The Court of Appeals would give declaratory judgment on the obligation of the state. If there was such an obligation, we anticipate that the state would either comply with that obligation no later than the next ensuing fiscal year, unless it could obtain a stay from this Court, or remove the mandate. [.Durant I, 456 Mich 205-206.]
The Durant I majority correctly recognized that, because of the nature of the relief sought, res judicata would not bar future claims concerning alleged mandates similar to those actually reviewed in Durant I.
Also pertinent here is the discussion in Restatement 2d, Judgments, § 33, p 332:
A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action. [Emphasis added.]
Thus, the general rule concerning declaratory relief is that res judicata applies only to “matters declared” and “any issues actually litigated... and determined in the action.”
A comment to the Restatement, § 33 continues:
c. Effects as to matters not declared. When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action. [Id., § 33, comment c, p 335.]
Hence, a declaration coupled with no other relief does not bar a later claim or merge with it.
*138 The problem with trying to apply a doctrine to circumstances outside the norm is well illustrated by the troublesome application of res judicata to the facts of this case. Here, the majority concludes that all the “pre-Durant 7” mandates could have been raised in the earlier Durant I litigation. Ante at 125.
I disagree that the claims here arose out of the same “transaction” for the purpose of applying res judicata.[4] The majority contends that a decision whether factual grouping constitutes a “transaction” for the purposes of res judicata involves a consideration of whether the facts are related in “ ‘time, space, origin, or motivation.’ ” Ante at 125 (citation omitted; emphasis added in majority opinion). As the majority recognizes, a number of the claims in this case involve statutorily mandated activities that came into existence only while the Durant I litigation was pending. Yet the majority finds that these claims are related in time, space, and origin. I disagree.
The statutory language at issue in a number of these claims did not exist when plaintiffs filed suit in Durant 7. This fact is an illustration of the unfortunate snail’s pace of much appellate process. However, I would not tie the appellate courts’ lack of speed to a finding that claims arising from later statutory enactments were part of the original “transaction.”[5]
*139 The new claims may be related to each other in “motivation” and perhaps in “origin”. But a finding that they are related in “time” essentially requires the use of the courts’ lengthy Durant I deliberations as a vehicle for time travel. Although interesting from a quantum mechanic’s perspective, I would not find that res judicata can be applied to claims by the Durant I plaintiffs that involve statutory enactments effective after Durant I was filed. Res judicata should not be ruled to bar these “later” causes of action.
It took our courts seventeen years to decide the limited issues actually before them in Durant I. In light of that fact, I question that the piecemeal amalgamation of claims suggested by the majority would have actually created a “ ‘convenient trial unit.’ ” Id. The majority faults plaintiffs for failing to move to add claims under MCR 2.118(E),[6] to an ongoing declaratory judgment action begun seventeen years before this Court’s ultimate decision. I do not. It would serve no useful purpose to require plaintiffs to try to add these claims solely to preserve their right to bring them later.
Plaintiffs raise an argument against ever applying res judicata to claims arising from statutes in existence at the time the Durant I complaint was filed. They assert that a new “transaction” arises whenever the Legislature amends statutory funding vehicles, such as 2000 PA *140 297, and fails to include adequate funding to meet its obligations under § 29. I find the argument persuasive.
Two requirements must be met in a § 29 action: a mandate and a failure to fund. The proposal of a mandate alone does not form the basis of a claim. It is only when the mandate is unfunded, or underfunded, that the state has violated § 29.
It is inappropriate to preclude the litigation of all claims relating to changes over time in the funding levels of a mandated program. Such a preclusion would have required the Durant I plaintiffs to become mind-readers and to have anticipated all future funding decisions concerning “pre-Durant 7” mandates.
The majority fails to recognize that a § 29 claim involves both a mandate and a funding decision. In so doing, it focuses too narrowly on the specific language pleaded in the complaint, rather than on the substance of the underlying claims.
The majority effectively concedes that plaintiffs’ counsel in fact made such an assertion. During oral arguments and in his appellate brief, counsel argued that the state decreased its proportion of funding levels of a mandated program after Durant I. Ante at 125 n 16. However, the majority relegates this actual claim to a footnote, without even a discussion of why plaintiffs were required to plead with more specificity.[7]
I question what the purpose of plaintiffs’ claims in this declaratory action would be, if not to gain a declaration that the state failed to meet its current funding obligations. Language to this effect is included in plaintiffs’ prayer for relief in the second amended *141 complaint. The only logical conclusion from the pleadings is that plaintiffs sought relief because the state decreased the funding levels of a mandated program from that required under § 29.
In addition, the majority intimates that plaintiffs could amend their pleadings to include such a claim. But rather than simply recognizing the actual substance of plaintiffs’ claims, the majority forces plaintiffs to jump through yet another hoop. It requires plaintiffs to make a motion on remand under MCR 2.118(A)(2) or (E) to add the claims to those that this Court has already directed the Court of Appeals to entertain. I find this action contrary to the purpose of res judicata generally and of no service to the parties in this dispute.
III. CONCLUSION
In conclusion, I agree with the majority’s ruling that the school district plaintiffs who were not involved in Durant I agreed to be treated similarly to those who participated in Durant 7. However, I dissent from the majority’s disposition of plaintiffs’ “pre-Durant 7” claims for the reasons stated. I would not hold that these claims were barred by res judicata. Instead, I would remand them to the Court of Appeals for review on the merits.
To the extent that the majority has reviewed plaintiffs three “post-Durant 7” claims, I agree with the result reached regarding the alleged mandatory activities under MCL 388.1752, EO 2000-9, and MCL 380.1277. However I dissent from the majority’s analysis of the activities required under MCL 380.1282. I would instead remand this claim to the Court of Appeals for further factual findings.

 Durant v Michigan, 456 Mich 175; 366 NW2d 272 (1997).

 The particularities of MCL 380.1279 also provide an example of the problem created by the majority’s decision to use the issuance date of Durant I as the cutoff date for preclusion under res judicata. The first 1997 revision of MCL 380.1279 made a number of changes to the language of the state-endorsed high school diploma provision. However, they did not become effective until June 16,1997, which was after Durant I was argued, but before the opinion was issued. A litigant should not be expected to amend a complaint after oral argument while this Court’s decision is pending at the risk of having his claim barred by res judicata. Moreover, only a mandate coupled with underfunding will give rise to a Const 1963, art 9, § 29 claim. Therefore, a cause of action concerning these particular 1997 changes could arguably not accrue until at least the 1997-1998 school year when the state failed to fund the mandated activities.

 The majority concludes that a taxpayer in a non-Durant I school district stands in privity with Durant I school district or nonschool *136 district plaintiffs for res judicata purposes. I disagree. As the majority notes, ante at 122, the outermost limit of the doctrine requires both a “ ‘substantial identity of interests’ ” and a “ ‘working functional relationship,’ ” quoting Baraga Co v State Tax Comm, 466 Mich 264, 269-270; 645 NW2d 13 (2002). The taxpayer plaintiffs who were not involved in Durant I may have interests similar to those of the other plaintiffs. But I fail to see how they have a working functional relationship with the Durant I plaintiffs. Moreover, some of the taxpayers may not have been in the school districts during the years preceding the majority’s 1997 cutoff date. Could they be hound by the actions of either set of school district plaintiffs? Accordingly, given that the taxpayers are the real parties in interest here, I particularly question the application of res judicata to the non -Durant I taxpayers. The majority expresses concern that recognizing the lack of privity here will open the floodgates to repeated litigation of exactly the same claim with different plaintiffs. I acknowledge these concerns. However, rather than rely on a strained application of privity and res judicata, I would address them using the principle of stare decisis, along with possible sanctions pursuant to MCR 2.114.

 Although it is tangential to my analysis of the issues here, I disagree with the majority’s holding that “this Court has accepted the validity of the broader transactional test in Michigan ...Ante at 124. It cites Sewell v Clean Cut Mgt, Inc, 463 Mich 569, 575-576; 621 NW2d 222 (2001), and Dart v Dart, 460 Mich 573, 586; 597 NW2d 82 (1999), for this proposition. However, in both Sewell and Dart, we applied the “transactional” test and the “same elements” test simultaneously. Id.

 I think a more simple analogy may be useful. In year one, plaintiff is involved in a vehicle accident with defendant. Plaintiff files suit and defendant responds that he was not negligent. That claim begins working *139 its way through our court system. It takes a year to reach the appellate stage. Ironically, in year two, while the appellate court ponders the initial question of negligence, plaintiff and defendant are involved in a second accident. The same cars, now repaired and on the roadway, are involved. The first case is decided in favor of plaintiff. However, plaintiff then brings a second suit for negligence arising from the second accident. I doubt the majority would find that the second claim is barred by res judicata. Yet that is essentially what it decides here regarding the Durant I plaintiffs.

 Ante at 126 n 17.

 I am not aware of any declaration by this Court that there are pleading requirements particular to an action claiming relief pursuant to the Headlee Amendment.