*142 WEAVES, J.
(dissenting in part and concurring in part). I respectfully dissent from the majority’s conclusion that plaintiffs’ claims are barred by res judicata. The majority’s broad application of res judicata to cases arising under the Headlee Amendment[1] eviscerates the standing granted to taxpayers under art 9, § 32 of the constitutional amendment and precludes suits in subsequent years for subsequent funding violations of art 9, § 29.
Additionally, I dissent from the majority’s conclusion that the release bars claims by those plaintiffs that signed releases after Durant 1[2] to receive a portion of the money damages. More fact-finding is required to determine which claims might be barred by the release.
While I disagree with the majority’s analysis of res judicata and the release, I concur with the majority’s conclusion that plaintiffs’ claim based on record-keeping activities, MCL 388.1752 and Executive Order No. 2000-9, should not be dismissed because plaintiffs have alleged new activities that were not funded as Const 1963, art 9, § 29 requires.
For these reasons, I would reverse the decision of the Court of Appeals and remand this case to that Court for proceedings consistent with this opinion.
I. THE HEADLEE AMENDMENT AND RES JUDICATA
Const 1963, art 9, § 29 provides in part:
The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law: A new activity or service or an increase in the [level] of any activity or service beyond that required by *143 existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.
Standing to pursue violations of this section, as well as other sections of the Headlee Amendment, is given to all taxpayers in the state. Const 1963, art 9, § 32 provides:
Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of the Article, and, if the suit is sustained, shall receive from the applicable unit of government his costs incurred in maintaining such suit. [Emphasis added.]
Constitutional provisions, including those that comprise the Headlee Amendment, are interpreted according to the “common understanding” that the people would give the provision. As explained by Justice COOLEY:
“A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of people themselves, would give it. ‘For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.’ ” [Traverse City School Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley’s Const Limitations, p 81 (emphasis in original).]
*144 Additionally, courts may consider the circumstances surrounding the adoption of the provision and the purpose sought to be accomplished. Id.
The majority cites the rule of common understanding and opines that under the rule, the people would have expected that the broad principles of res judicata articulated in the majority opinion apply to cases seeking enforcement of the provisions of the Headlee Amendment. But the majority’s application of the rule is disingenuous and its conclusion is unsupported by the language or purpose of the amendment.
Art 9, § 32 gives “any taxpayer of the state” standing to enforce the provisions of the Headlee Amendment. This grant of standing is consistent with the amendment’s purpose, which, as explained by this Court, is to limit the expansion of legislative requirements placed on local governments:
The Headlee Amendment was “part of a nationwide ‘taxpayers revolt’... to limit legislative expansion of requirements placed on local government, to put a freeze on what they perceived was excessive government spending, and to lower their taxes both at the local and state level.”
[Airlines Parking, Inc v Wayne Co, 452 Mich 527, 532; 550 NW2d 490 (1996), quoting Durant v State Bd of Ed, 424 Mich 364, 378; 381 NW2d 662 (1985).]
Consequently, it is extremely doubtful that the people of this state would have expected their ability to enforce the Headlee Amendment to be hampered by the broad application of res judicata that the majority imposes. Rather, as explained below, a “common understanding” of the people would suggest the opposite conclusion-that the Constitution’s grant of standing under art 9, § 32 to “any taxpayer” is just that-a broad grant of *145 standing that permits any taxpayer to pursue actions necessary to enforce the provisions of the Headlee Amendment.
Traditionally, res judicata requires establishing three elements: “(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies.” Sewell v Clean Cut Mgt, Inc, 463 Mich 569, 575; 621 NW2d 222 (2001), quoting Dart v Dart, 460 Mich 573, 586; 597 NW2d 82 (1999). The majority applies this doctrine so broadly as to eviscerate the standing that art 9, § 32 provides to “any taxpayer” to pursue Headlee violations.
First, the majority’s analysis of “privity” is overly broad when applied to Headlee cases. Privity examines the interests of the parties and considers whether there is a substantial identity of interests between the parties such that the interests of the current plaintiffs were adequately represented by parties in a prior suit-in this case, the plaintiffs in Durant I. The majority reasons that the interest of one taxpayer or local unit of government “will almost always be identical” to “the interests of all similar local units of government and taxpayers,” ante at 122; consequently, the majority finds privity between the plaintiffs in Durant I and the plaintiffs in this case. Under the majority’s analysis, any time that a school district or a taxpayer in a school district raises a Headlee claim, there will be privity between that plaintiff and all other school districts in the state and taxpayers in those school districts. Thus, one taxpayer’s decision to pursue a particular Headlee claim may foreclose suit by any other taxpayer who wishes to bring suit to enforce the Headlee Amend *146 ment. This erodes the standing granted to any taxpayer in art 9, § 32 of the Headlee Amendment.
Second, when examining whether the claims raised in this case could have been raised in Durant I, the majority opines that almost all the claims could have, and consequently should have, been raised in Durant I. This conclusion is problematic for at least two reasons. First, it is unrealistic to expect the plaintiffs in Durant I to add new Headlee claims that arose as Durant I dragged its way through the court system for seventeen years. Second, as Justice CAVANAGH notes in his dissent, the majority focuses solely on one question when addressing this element of res judicata: when the mandate being challenged was enacted. However, in addition to considering when the mandate was enacted, one must also consider when the lack of funding occurred because, as Justice CAVANAGH explains, the lack of funding may not occur until some time after the mandate was created.
By applying overly broad privity analysis and by failing to consider when the lack of funding occurred, the majority will bar suits by plaintiffs that seek to raise yet unchallenged Headlee violations or to raise Headlee violations occurring in subsequent years. This is inconsistent with art 9, §§ 29 and 32 and contrary to the people’s understanding that any taxpayer would have standing to enforce the Headlee Amendment. While the people may have understood that a specific taxpayer who raised a specific claim and received a decision on that specific claim could not pursue that claim a second time once that claim had been decided by the courts, the people could not have understood the broad grant of standing to “any taxpayer” to mean that one taxpayer’s decision to pursue a specific claim precludes another taxpayer from pursuing another Headlee violation that *147 may have existed, but was not raised, in the suit by the first taxpayer. Moreover, the people could not have understood that subsequent suits for funding violations under art 9, § 29 would be barred if the mandate existed at the time another Headlee violation was challenged because this would be contrary to the very intent of that provision, which is to prevent the Legislature in subsequent years from reducing funding or from adding new activities or increasing the level of activities without providing funding.
The majority surmises that its broad application of res judicata is necessary to prevent a “total paralysis of government,” ante at 127, and to provide finality in the law. However, the majority fails to consider other facts that will provide finality and discourage frivolous law suits. First, as Justice KELLY notes in her dissent, if a second claim by a different taxpayer raises an issue that has already been decided by the Court of Appeals or this Court in a previous suit, courts will be bound or guided by stare decisis to apply the previous decision to the current claim, and the case will quickly be resolved.[3] Second, as we all know, litigation is expensive, and plaintiffs only have an opportunity to recover their costs if they prevail on the merits of their suit. Thus, the cost of litigation will discourage frivolous suits. Third, there is a one-year statutory period of limitations on Headlee cases. MCL 600.308a(3). [4] Thus, the Headlee
*148 Amendment is already “workable” without the majority’s imposition of an overbroad application of res judi-cata.
II. RELEASE
A school district that was not a party to the Durant I suit was permitted to receive a portion of the money damages awarded in that suit, provided that the school district signed a release that stated that the district
waive [d] any right or interest it may have in any claim or potential claim through September 30,1997 relating to the amount of funding the district or intermediate district [was], or may have been, entitled to receive under the state school aid act of 1979, 1979 PA 94, MCL 388.1601 to 388.1772, or any other source of state funding, by reason of the application of section 29 of article IX of the state constitution of 1963, which claims or potential claims are or were similar to the claims asserted by the plaintiffs in the consolidated cases known as [Durant i]. [MCL 388.1611f(8).]
Thus, the issue regarding any district that signed a release after Durant I is whether any of the claims asserted by that district in this case are barred by the release.
As the majority notes, the scope of the release is controlled by the language of the release, ante at 127. The language of the release in the present case is very broad. By it, the district waives “any right or interest it may have in any claim or potential claim through September 30,1997,” MCL 388.1611f(8), relating to the amount of funding it may have been entitled to receive under the school aid act of 1979 or any other source of state funding. Thus, under the language of the release, there may be claims that are barred by the release. However, I would not dismiss any claims at this *149 time. Additional fact-finding is required to determine which plaintiffs in the present suit signed releases in Durant 1 and to determine which claims, if any, arose before September 30,1997. When addressing this latter question, one must consider not only when the mandate being challenged was enacted, but also when the failure to fund occurred.
While this may potentially lead to disparate results between districts that were parties to the suit in Durant 1 and districts that were not parties to the suit, but, instead, participated in the damages award by signing a release, these disparate results can be tolerated in the present case because the circumstances are highly unusual in two regards. First, money damages were awarded in Durant I despite the fact that damages are not provided for in § 29 or § 32 of the Headlee Amendment. See Durant I, 456 Mich 221-233 (opinions of BRICKLEY, J., and WEAVER, J., each concurring in part and dissenting in part).[5] Second, the school districts that signed releases were not actual parties to the law suit, but were, nonetheless, allowed to receive a portion of the damages if they signed a release. Thus, they should be bound by the release that they signed.
III. CONCLUSION
I dissent from the majority’s conclusion that plaintiffs’ claims are barred by res judicata. Such a conclusion is contrary to the “common understanding” that the people would give the Headlee Amendment, as well contrary to the purpose or the language of the amendment. The majority’s application of overbroad res judi-cata principles to plaintiffs’ Headlee claims eviscerates *150 the standing granted to taxpayers under art 9, § 32 and will preclude suits for subsequent funding violations of art 9, § 29. Further, at this time, I would not conclude that the claims of plaintiffs that signed the release are barred by the release because more fact-finding is required before that determination can be made. Consequently, I would reverse the decision of the Court of Appeals and remand this case to that Court for proceedings consistent with this opinion.
CAVANAGH, J. (dissenting). Although I agree with the majority that Michigan uses the same transaction test to determine whether claims are barred by res judicata, I disagree with the majority’s application of that test to the facts of this case. The majority holds that plaintiffs’ claims are barred by res judicata because they arose from the same transaction as the claims in Durant v Michigan, 456 Mich 175; 566 NW2d 272 (1997) (Durant I), and, thus, could have been filed while that litigation was pending. I disagree.
In Sewell v Clean Cut Mgt, Inc, 463 Mich 569, 575; 621 NW2d 222 (2001), this Court held that res judicata bars a second action when (1) the first action was decided on its merits, (2) both actions involve the same parties or their privies, and (3) the issue in the second case was, or could have been, resolved in the first case. I agree with the majority that Durant I was decided on its merits and that both actions involve the same parties or their privies. However, I do not agree that plaintiffs’ claims could have been resolved in Durant I.
Plaintiffs’ claims are based on a lack of funding for certain activities and services. The majority examines each activity or service and focuses on when each activity or service was mandated in order to determine whether the claim regarding that service is barred by *151 res judicata. This examination misses the point. Plaintiffs’ action challenged funding under the second sentence of Const 1963, art 9, § 29, frequently referred to as the “prohibition on unfunded mandates” (POUM) clause. As noted by the majority, the POUM clause requires the state to fully fund any new or increased activities or services mandated or increased after 1978. The POUM clause provides:
A new activity or service or an increase in the [level] of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. [Const 1963, art 9, § 29.]
A challenge under the POUM clause is to the funding for the mandate, not to the mandate itself. Thus, when the activity was mandated is important to determine whether it was enacted after the 1978 base year, but it is not useful in determining whether the current funding challenge is barred by res judicata. The majority’s approach examines whether each mandate existed while Durant I was pending; that is not the operative question. The controlling question is whether the alleged funding deficiency relating to that mandate existed while Durant I was pending.[1]
*152 Plaintiffs’ claims could not have been raised while Durant I was pending because the claims are based on the funding established in 2000 PA 297, which was not enacted until three years after the resolution of Durant I. The majority fails to recognize that plaintiffs pleaded that the state decreased its proportion of funding levels of a mandated program after Durant I. Because the funding challenge arose after Durant I, plaintiffs’ claims are not barred by res judicata.
Although it would have been helpful had plaintiffs’ complaint directly referred to 2000 PA 297, explicit reference to the funding statute is not required in an action in this state. Plaintiffs’ second amended complaint contained three counts, each alleging, “Defendant state has failed to pay plaintiff school districts for the necessary increased costs of providing [the/these/said] activities and services [set forth in subparagraphs 15 A-H, 19 A-G, or 22 A-L above].” This is clearly sufficient to satisfy Michigan’s fact-pleading requirements.
MCR 2.111(B) requires a complaint to contain the following:
(1) A statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend ....
This rule does not require, nor has this Court ever required, a complaint to specifically state the statute under which the cause of action arises. MCR 2.111(B) only requires that the complainant provide the facts and “the allegations necessary reasonably to inform the adverse party of the nature of the claims. ...” The second amended complaint in this case did exactly that, it outlined activities and services that were mandated *153 under specific statutory sections and then alleged that the state failed to fund these activities and services.
Further, there are no specific pleading requirements for claims filed under the Headlee Amendment. This Court recently examined the pleading requirements for Headlee Amendment cases and issued an order vacating the Court of Appeals order and allowing the plaintiffs to amend their pleadings. Duverney v Big Creek-Mentor Utility Auth, 469 Mich 1042; 677 NW2d 836 (2004). Because today’s majority opinion creates a new requirement that complaints specifically refer to the statute on which the claim is based, plaintiffs in this case should certainly be allowed to amend their pleadings. Because I do not agree that a party must specifically refer to the funding statute in question, I would not dismiss plaintiffs’ claims on this technicality. Therefore, I respectfully dissent.

 Const 1963, art 9, §§ 25-32.

 Durant v Michigan, 456 Mich 175; 566 NW2d 272 (1997).

 Moreover, it seems unlikely that attorneys will pursue a Headlee claim that has already been clearly resolved by prior case law, unless they are arguing that a change in the law is warranted.

 MCL 600.308a(3) provides:
A taxpayer shall not bring or maintain an action under this section [Const 1963, art 9, § 32] unless the action is commenced within 1 year after the cause of action accrued.

 I would have concluded that money damages were not authorized by the Headlee Amendment and that only declaratory judgment was appropriate. Durant I, 456 Mich 232-233.

 Although not necessary to my analysis, I note that the majority asserts that the Durant I plaintiffs could have amended their pleadings at any time during the seventeen-year pendency of their suit. While MCR 2.118(E) provides for liberal amendment of pleadings, it is nonsensical to suggest that parties should move for leave to amend their pleadings because of a change in the law after judgment has been entered. Before today’s opinion, this Court had not recognized the possibility that a trial court may grant leave to amend pleadings after judgment has been entered. Nor had this Court examined whether a party may amend the pleadings while a case is pending on appeal. I do not agree with the majority’s holding that a party may amend its pleadings at any time before this Court issues a final decision.