# STATE OF MICHIGAN

# COURT OF APPEALS

DCL, INC.,

    Plaintiff-Appellant,

v

ADAM SCHRAGE, JON V. JASINSKI, and J.
VINCENT & ASSOCIATES, LLC f/k/a/ PMC
UNLIMITED, LLC,

    Defendants-Appellees.

UNPUBLISHED
November 10, 2015

No. 322959
Charlevoix Circuit Court
LC No. 13-044724-CP

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, DCL, Inc. (DCL), appeals as of right two orders granting summary disposition to defendants under MCR 2.116(C)(7): one order in favor of Jon Jasinski and J. Vincent & Associates, LLC (the Jasinski defendants), and one order in favor of Adam Schrage. We affirm because each of plaintiff's claims was barred either by res judicata or the rule against independent actions alleging intrinsic fraud in the procurement of a court order.

## I. FACTS AND PROCEDURAL HISTORY

DCL is a business involved in designing, manufacturing, and selling bulk material handling equipment. Schrage was previously employed by DCL until he quit in November 2008. As a condition of his employment with DCL, Schrage signed a confidentiality agreement in which he agreed

> [n]ot to disclose directly or indirectly to any unauthorized person without [DCL]'s prior written permission at any time during or subsequent to my employment any and all knowledge not already available to the public or not subsequently made available to the public through no fault of my own which I acquire respecting [DCL]'s inventions, designs, methods, systems, improvements, trade secrets, customer information, or other private or confidential matters acquired in the course of my employment. I agree that such matter and material is the property of [DCL] and that I will hold such in trust solely for the benefit of [DCL].

-1-

Soon after terminating his employment with DCL, Schrage went to work for the Jasinski defendants. Jasinski is Schrage's father-in-law, and the Jasinski defendants, who previously did business under the name Paragon, are competitors of DCL.

On November 25, 2009, DCL filed a complaint against Schrage and the Jasinski defendants, alleging that the Jasinski defendants wrongfully used DCL's trade secrets, images, and drawings, which had been given to them by Schrage. The complaint contained counts for misappropriation of trade secrets, breach of the confidentiality agreement, intentional interference with contractual relations, tortious interference with contractual relations, violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, and civil conspiracy.

This first case ended with a consent order, entered July 16, 2010, which was signed by all of the parties, their attorneys, and the trial judge. The consent order required Schrage to comply with the confidentiality agreement and to hold DCL's trade secrets and customer information in trust. It also enjoined Schrage and the Jasinski defendants from using or disclosing DCL's "[t]rade secrets, which specifically include [DCL]'s proprietary designs, specifications, dimensions, measurements, model numbers, weights, tolerances, capacities, options, materials, technical drawings and images of [DCL]'s bulk material handling equipment." The consent order listed certain specific models that defendants were enjoined from using or disclosing, including "Model CIF-250." The order prohibited defendants from advertising or manufacturing a specific list of products, required them to redesign and rename certain product lines, and ordered them to cease and desist from designing, building, advertising, and selling products based on or incorporating any elements of DCL's trade secrets. Finally, the consent order dismissed DCL's claims against defendants with prejudice and "resolve[d] the last pending claim in [the] matter and close[d] [the] case."

Schrage and Jasinski also signed affidavits on July 16, 2010, which accompanied the consent order. Schrage's affidavit stated in relevant part the following:

> 6. After terminating my employment with DCL, I assisted Defendant Paragon Manufacturing Company ("Paragon") and Defendant Jasinski in designing, developing and manufacturing Paragon's bulk material handling equipment.
>
> 7. Prior to and subsequent to terminating my employment with DCL, I did not remove a copy for my own use, for Paragon's use, or for any other third party's use, any of DCL's drawings, designs, documents or any other Trade Secrets.
>
> 8. I did not use any of DCL's drawings, designs, documents or any other Trade Secrets in designing and/or drawing Paragon's products, drawings, catalogs or website.

Jasinski's affidavit stated in relevant part the following:

> 7. After terminating his employment with DCL, Inc., Adam Schrage assisted Paragon in designing, developing and manufacturing Paragon's bulk material handling equipment.

8. Prior to and subsequent to terminating his employment with DCL, Adam Schrage did not disclose or provide any of DCL's drawings, designs, documents or any other Trade Secrets, including copies thereof, to me, my son Jason or Paragon.

9. In designing, developing and manufacturing Paragon's products and product literature, specifically including Paragon's drawings, catalogs and website, myself, Paragon and Adam Schrage did not use any of DCL's drawings, designs or documents.

Before the parties signed the 2010 consent order, the Jasinski defendants submitted a quote and order for compact dust collectors, "Model CIF-250," to a company called USA Tank Storage Systems (USA Tank). On August 1, 2010, a purchase order was executed between Jasinski and a USA Tank representative for the purchase of several "Model CIF-250" units.

On May 14, 2013, DCL filed a new complaint, alleging that defendants delivered copies of DCL's trade secrets to USA Tank after executing the affidavits and consent order in July 2010. DCL alleged that defendants' misappropriation, use, and disclosure of DCL's trade secrets and their interference with DCL's business relationships was ongoing. In addition to counts similar to those raised in the 2009 complaint, such as misappropriation of trade secrets, breach of contract, tortious interference with business expectancies, and unjust enrichment, the new complaint also contained a count for fraudulent misrepresentation regarding Schrage's and Jasinski's 2010 affidavits. DCL claimed that it relied on representations in the affidavits when it agreed to enter the 2010 consent order and forego further litigation in the first suit, but it did not include a specific count for violation of the consent order.

Schrage and the Jasinski defendants filed motions for summary disposition under MCR 2.116(C)(7) and (10), arguing that DCL was precluded from raising claims in the 2013 complaint that it pursued or could have pursued in the first action. At a hearing on the parties' motions, the trial court characterized DCL's 2013 suit as "claiming fraud in the inducement regarding a consent order dismissing the first case with prejudice." The trial court concluded that because the fraud alleged by DCL was intrinsic fraud, the 2013 complaint was barred, and DCL's only relief was to proceed under MCR 2.612(C) (grounds for relief from judgment). Thereafter, the trial court granted defendants' motions for summary disposition under MCR 2.116(C)(7).

## II. DISCUSSION

### A. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109,

118; 597 NW2d 817 (1999). In evaluating a motion under MCR 2.116(C)(7),[1] courts accept the allegations in the complaint as true absent contradictory evidence. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). The application of res judicata is a question of law that is reviewed de novo. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999).

## B. RES JUDICATA

"Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). "The doctrine of res judicata applies not only to facts previously litigated, but also to points of law necessarily adjudicated in determining and deciding the subject matter of the litigation." *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993). The doctrine precludes "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Dart*, 460 Mich at 586.

Res judicata prohibits litigation of a second action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart*, 460 Mich at 586. Here, the first action was decided on the merits. See *Ditmore v Michalik*, 244 Mich App 569, 576; 625 NW2d 462 (2001) ("Res judicata applies to consent judgments."). Additionally, both the first case and the current case involve the same parties and their privies. Therefore, the only issue is whether the current case involves matters that were either contested or could have been contested in the previous action.

DCL's 2009 complaint contained counts for misappropriation of trade secrets, breach of the confidentiality agreement, intentional interference with contractual relations, tortious interference with contractual relations, violation of the MCPA, and civil conspiracy. DCL's 2013 complaint contained counts for misappropriation of trade secrets, fraudulent misrepresentation, breach of contract, tortious interference with business expectancies, and unjust enrichment. With the exception of DCL's fraud claim, all of the counts in DCL's 2013 complaint mirror the claims and allegations presented in the 2009 complaint. Therefore, they represent matters that were contested in the previous litigation and are barred by res judicata. To the extent DCL argues that defendants' tortious interference with its business expectancies and

---

[1] MCR 2.116(C)(7) provides that summary disposition is appropriate if "entry of judgment, dismissal of the action, or other relief is appropriate because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action."

misappropriation of trade secrets is ongoing, DCL's remedy is to seek enforcement of the 2010 consent order, which contained enforcement terms in the event of a violation.[2]

In contrast, DCL did not raise a claim of fraudulent misrepresentation in the 2009 complaint. Indeed, such a claim did not exist during the first suit because DCL alleged that defendants' fraudulent actions occurred in the settlement of the first action. Accordingly, DCL's fraud claim was not, and could not have been, resolved as part of the previous case.

## C. INDEPENDENT ACTIONS BASED ON INTRINSIC FRAUD

DCL argues that any plaintiff damaged by fraudulent inducement in the settlement of a legal claim may choose among several remedies, including rescinding the transaction consummated by fraud or bringing an independent suit for damages. We disagree.

In *Daoud v De Leau*, 455 Mich 181, 203; 565 NW2d 639 (1997), our Supreme Court held that a second suit for fraud, based on intrinsic fraud in a previous suit, "may not be filed against a person involved in a first suit, if the statutes and court rules provide an avenue for bringing the fraud to the attention of the first court and asking for relief there." Intrinsic fraud is fraud within the cause of action itself. *Sprague v Buhagiar*, 213 Mich App 310, 314; 539 NW2d 587 (1995). "An example of intrinsic fraud would be perjury . . . discovery fraud, fraud in inducing a settlement, or fraud in the inducement or execution of the underlying contract." *Id.*

In this case, DCL raised a claim of intrinsic fraud relating to Schrage's and Jasinski's allegedly fraudulent inducement of the consent order in the first suit. The court rules provided an avenue for DCL to seek redress for the alleged fraud before the first court. Under MCR 2.612(C)(1)(c), "[o]n motion and on just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" on the grounds of "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Although MCR 2.612(C)(3) states that nothing in the court rule limits the "power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding," the Supreme Court's holding in *Daoud* does preclude such an action when it is based on intrinsic fraud used to procure a court order or judgment in a previous case.[3] Therefore, DCL was not permitted to bring an independent action for fraud in the current case, and the trial court did not err in dismissing DCL's suit.

---

[2] Specifically, paragraph 12 of the 2010 consent order states that "[t]he terms set forth above shall be enforceable by equitable relief, contempt, and/or sanction powers" of the court.

[3] DCL argues that such a holding prevents a party deceived by fraud from obtaining relief if the fraud is not discovered within one year. Under *Daoud*, plaintiff is correct in this assessment with regard to intrinsic fraud. See MCR 2.612(C)(2) (stating that a motion under MCR 2.612(C)(1)(c) must be brought "within one year after the judgment, order, or proceeding was entered or taken"). However, this is not any more unjust than a preclusion of suit under any statute of limitations.

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly